**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

**DR. OLASENI "SENI" FADIPE,**
Plaintiff,

CIVIL ACTION NO. ______________

**VERSUS**

JUDGE ________________________

LOUISIANA SCHOOL FOR MATH, SCIENCE, AND THE ARTS; STEVE HORTON; JASON ANDERSON; SHEILA KIDD; and ANNE LUCAS,

Defendants.

MAGISTRATE JUDGE __________

**JURY TRIAL DEMANDED**

---

**COMPLAINT FOR DAMAGES, STATUTORY PENALTIES, AND INJUNCTIVE RELIEF**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Dr. Olaseni "Seni" Fadipe, who respectfully files this Complaint for Damages, Statutory Penalties, and Injunctive Relief against the above-named Defendants, and in support thereof avers as follows:

## I. NATURE OF THE ACTION

1. This is a civil action arising from a coordinated pattern of harassment, retaliation, sex-based discrimination, and constructive discharge directed at Plaintiff, a tenured mathematics instructor, by the Louisiana School for Math, Science, and the Arts ("LSMSA") and its senior administrators, together with the Defendants' failure to provide Plaintiff the continuation-of-coverage ("COBRA") notice to which he was entitled upon separation.

2. Plaintiff seeks compensatory damages, statutory penalties, equitable and injunctive relief, attorney's fees, and costs for:

   - Denial of continuation-coverage election notice, in violation of the federal continuation-coverage notice requirements (29 U.S.C. §§ 1161–1169 and 29 U.S.C. § 1132(c), and, in the alternative, 42 U.S.C. §§ 300bb-1 through 300bb-8);

- Retaliation, sex discrimination, and hostile work environment in violation of the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:301–332;
- Reprisal in violation of the Louisiana Whistleblower Statute, La. R.S. 23:967;
- Constructive discharge;
- Invasion of privacy under Louisiana law;
- Intentional infliction of emotional distress; and
- Negligent and bad-faith employment practices under La. C.C. arts. 2315 and 2320.

## II. JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under the laws of the United States governing continuation of group health coverage and the notice obligations attendant thereto.

4. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's claims arising under Louisiana law, because those claims form part of the same case or controversy and arise from a common nucleus of operative fact.

5. Venue is proper in the Western District of Louisiana under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in Natchitoches Parish, Louisiana, where LSMSA is located and where the Defendants reside or maintain their principal places of business. Natchitoches Parish lies within the Alexandria Division of this District.

## III. PARTIES

6. Plaintiff, Dr. Olaseni "Seni" Fadipe, is a person of the full age of majority who was at all relevant times employed by LSMSA as a mathematics instructor and who currently resides in the State of Colorado.

7. Defendant Louisiana School for Math, Science, and the Arts ("LSMSA") is a state-operated residential high school located in Natchitoches Parish, Louisiana, and was at all relevant times Plaintiff's employer within the meaning of the LEDL.

8. Defendant Steve Horton was, at all relevant times, the Executive Director of LSMSA and is sued in his individual and official capacities.

9. Defendant Jason Anderson was, at all relevant times, the Principal/Deputy Director of LSMSA, was named Executive Director of LSMSA effective on or about July 1, 2026, and is sued in his individual and official capacities.

10. Defendant Sheila Kidd was, at all relevant times, the Human Resources Director of LSMSA and is sued in her individual and official capacities.

11. Defendant Anne Lucas was, at all relevant times, a member of the administrative/human-resources support staff of LSMSA and is sued in her individual and official capacities.

## IV. CONDITIONS PRECEDENT AND ADMINISTRATIVE PREREQUISITES

12. On or about November 20, 2025, Plaintiff, through counsel, served Defendants with written notice of his intent to file a civil action, satisfying the thirty (30)-day notice requirement of La. R.S. 23:303(C).

13. Thereafter, the parties engaged in good-faith efforts to resolve this dispute without litigation, including written settlement correspondence exchanged between December 2025 and March 2026. Those efforts were unsuccessful, and Defendants did not agree to resolution. All conditions precedent to suit under the LEDL have been satisfied, waived, or excused.

14. On or about April 22, 2026, Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission in order to preserve his federal administrative remedies. Plaintiff reserves the right to amend this Complaint to assert claims under Title VII of the Civil Rights Act of 1964 upon receipt of a Notice of Right to Sue.

## V. FACTUAL ALLEGATIONS

### A. Employment Background

15. Plaintiff was employed by LSMSA from on or about January 7, 2019, through on or about June 27, 2025, teaching advanced mathematics, sponsoring student organizations,

and contributing substantially to LSMSA's academic programs. Plaintiff performed his duties competently and was regarded as a strong and dedicated instructor throughout his tenure.

**B. Harassment of Plaintiff's Spouse and the Origin of Retaliatory Animus**

16. During the spring of 2024, Defendant Anderson delivered a coercive demand letter to Plaintiff's then-spouse, also an LSMSA employee, requiring her signature. Upon information and belief, the demand letter and the harassment directed at Plaintiff's spouse were motivated by unlawful discriminatory animus and constituted conduct prohibited by Louisiana law. Plaintiff, acting in good faith, objected to and refused to validate or participate in this conduct, which he reasonably identified as discriminatory harassment. Defendant Anderson subsequently issued a written apology to Plaintiff's spouse.

17. Upon information and belief, Defendant Kidd thereafter informed Defendant Horton that Plaintiff "would not return because his wife had been harassed," thereby marking Plaintiff as an employee adverse to the administration and setting in motion the retaliatory course of conduct described below.

**C. Human-Resources Boundary Violations**

18. In or about May–June 2024, Defendant Kidd personally assisted Plaintiff's spouse in moving out of the marital residence, an intrusion into Plaintiff's private affairs wholly outside the legitimate scope of LSMSA's human-resources function.

19. After Plaintiff declined to cooperate with or endorse this conduct, the administration's treatment of Plaintiff shifted markedly from supportive to hostile.

**D. Removal of Courses and Professional Undermining**

20. Despite documented student enrollment and demand, the administration removed key courses Plaintiff had developed and taught, including Financial Literacy and Modern Algebra. These actions were taken to marginalize Plaintiff, diminish his professional standing, and destabilize his position at LSMSA.

**E. February 2025: The Coerced Resignation**

21. On or about February 17, 2025, Plaintiff informed Defendant Anderson that he was uncomfortable returning in the Fall due to the prospect of working in close proximity to his ex-spouse following their separation.

22. Rather than accommodate this concern, Defendant Anderson initially suggested placing Plaintiff and his ex-spouse in different buildings and, during a Microsoft Teams meeting on or about February 19, 2025, stated that he would direct the mathematics department chair, Dr. Burkman, to prepare for Plaintiff's replacement in the Fall.

23. On or about February 26, 2025, Defendant Anderson told Plaintiff to resign. Under the duress created by Defendants' conduct, and while suffering significant stress, Plaintiff submitted a resignation that same evening. The resignation was not voluntary; it was the product of coercion and a workplace that Defendants had rendered intolerable.

**F. June 2025: Coordinated Escalation and Removal from Campus**

24. In or about June 2025, when Plaintiff returned to perform his summer duties, the retaliatory conduct escalated and became coordinated, including, without limitation: excessive and pretextual administrative emails; non-confidential human-resources interventions; abrupt demands that Plaintiff surrender LSMSA equipment; and, on or about June 27, 2025, an order that Plaintiff leave campus immediately.

**G. Invasion of Privacy**

25. In connection with and following Plaintiff's separation, Defendants, among other things: subjected Plaintiff to non-confidential exit procedures; disclosed Plaintiff's personal email address to the LSMSA Foundation, resulting in repeated unsolicited solicitations; and engaged in persistent monitoring of Plaintiff's LinkedIn profile after his departure.

**H. Failure to Provide Continuation-of-Coverage (COBRA) Notice**

26. Plaintiff's group health coverage through LSMSA terminated upon his separation on or about June 27, 2025, a qualifying event triggering the continuation-coverage notice obligations of federal law.

27. On or about July 2, 2025, Plaintiff contacted the Office of Group Benefits ("OGB") to inquire about his continuation-coverage notice and was told that his employer was responsible for initiating the notice. On or about July 7, 2025, Plaintiff provided his updated Colorado mailing address by email to Defendant Lucas, who acknowledged receipt on or about July 14, 2025 without advising Plaintiff that any notice would issue from OGB.

28. Plaintiff never received a written continuation-coverage election notice. The only communications Plaintiff received referencing such coverage were text messages from unknown numbers on or about September 5 and September 12, 2025, which did not satisfy the form or content of a lawful election notice.

29. As a direct result, Plaintiff was deprived of his right to elect continuation coverage and of the information necessary to do so, and has suffered uncertainty regarding his coverage status and resulting harm.

**I. Withholding of Plaintiff's W-2 and Tax Records**

30. As part of the same ongoing pattern of harassment and retaliation, Defendants failed and refused to timely furnish Plaintiff with his Form W-2 wage and tax statement for the applicable tax year, notwithstanding their obligation to do so and notwithstanding Plaintiff's repeated need for the document, including after Plaintiff had already been required to file his tax return without it.

31. Plaintiff is a lawful permanent resident of the United States. As such, he is required to maintain continuous lawful employment and to preserve his W-2 and tax records for future immigration and naturalization purposes. Defendants knew, or reasonably should have known, of the heightened importance of these records to Plaintiff.

32. Defendants' failure to provide Plaintiff's W-2 caused him particular and foreseeable harm beyond ordinary inconvenience, including heightened anxiety concerning his immigration status, and compounded the emotional distress inflicted by Defendants' other conduct. This withholding was consistent with, and a continuation of, the retaliatory animus described above and forms part of the ongoing course of harassment directed at Plaintiff.

**J. Continuing Harm**

33. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, loss of professional standing and career opportunity, emotional distress, mental anguish, and other damages. Plaintiff remained unemployed for an extended period following his constructive discharge, and the circumstances of his separation, including inquiries by prospective employers concerning whether he was asked to resign, continue to impair his employability.

## VI. CAUSES OF ACTION

**COUNT I: Denial of Continuation-of-Coverage Notice**

34. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

35. Federal law requires that, upon a qualifying event such as the termination of employment, the responsible party notify the plan administrator and that a continuation-coverage election notice be furnished to the qualified beneficiary within the time prescribed by law, setting forth the beneficiary's rights, deadlines, premium obligations, and continuation-coverage options.

36. Defendants failed to provide Plaintiff any lawful continuation-coverage election notice following his qualifying event, thereby depriving Plaintiff of his right to elect continuation coverage.

37. To the extent LSMSA maintains a governmental plan, the analogous continuation-coverage notice obligations of the Public Health Service Act, 42 U.S.C. §§ 300bb-1 to 300bb-8, apply, and Defendants' failures violated those provisions as well. Plaintiff pleads these federal continuation-coverage theories in the alternative.

38. As a result of these violations, Plaintiff is entitled to statutory penalties as provided by law, equitable relief including an order compelling a retroactive opportunity to elect continuation coverage, attorney's fees, and costs.

**COUNT II: Retaliation**

39. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

40. The LEDL prohibits an employer from retaliating against an employee for opposing a practice made unlawful by the statute or for engaging in protected activity.

41. Plaintiff engaged in protected activity, including opposing the harassment of his spouse and expressing concern about the hostile conditions to which he was subjected.

42. In retaliation, Defendants altered the terms and conditions of Plaintiff's employment, removed courses he created, coerced his resignation, and orchestrated the coordinated June 2025 harassment and removal from campus. Defendants' stated and apparent reasons for these actions are pretextual.

43. Plaintiff is entitled to back pay, front pay, compensatory damages, attorney's fees, and costs under La. R.S. 23:303.

**COUNT III: Sex Discrimination**

44. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

45. The LEDL prohibits discrimination on the basis of sex with respect to the terms, conditions, and privileges of employment.

46. Defendants treated Plaintiff less favorably than similarly situated employees and, on the basis of sex, favored Plaintiff's spouse while subjecting Plaintiff to adverse treatment culminating in his constructive discharge.

47. Plaintiff is entitled to compensatory damages, equitable relief, attorney's fees, and costs.

**COUNT IV: Hostile Work Environment**

48. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

49. Defendants subjected Plaintiff to conduct that was severe or pervasive, that altered the terms and conditions of his employment, and that is attributable to the employer,

including coercion, surveillance, humiliation, professional undermining, and the coordinated harassment described above.

50. Plaintiff is entitled to compensatory damages, equitable relief, attorney's fees, and costs.

**COUNT V: Constructive Discharge**

51. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

52. Defendants deliberately rendered Plaintiff's working conditions so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign. Plaintiff's February 26, 2025 resignation was the foreseeable and intended result of Defendants' conduct and constitutes a constructive discharge.

53. As a result, Plaintiff is entitled to lost wages and benefits, including an amount equal to no less than one year of his annual salary at LSMSA, together with such additional compensatory damages as the evidence may establish.

**COUNT VI: Invasion of Privacy**

54. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

55. Under Louisiana law, an individual is protected against unreasonable intrusion into his private affairs and the public disclosure of private facts. Defendants invaded Plaintiff's privacy by intruding into his personal affairs, disclosing his personal contact information to third parties without authorization, and engaging in persistent post-employment monitoring of Plaintiff.

56. Defendants' conduct was unreasonable and offensive to a person of ordinary sensibilities and caused Plaintiff damages, for which the individual Defendants are personally liable under La. C.C. art. 2315.

**COUNT VII: Intentional Infliction of Emotional Distress**

57. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

58. Defendants’ conduct was extreme and outrageous, was intended to cause, or was undertaken in reckless disregard of the probability of causing, severe emotional distress, and did in fact cause Plaintiff severe emotional distress.

59. Plaintiff is entitled to compensatory damages under La. C.C. art. 2315 against the individual Defendants personally and against LSMSA under La. C.C. art. 2320.

**COUNT VIII: Negligent and Bad-Faith Employment Practices**

60. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

61. Defendants owed Plaintiff duties of reasonable care in the administration of his employment, separation, and benefits, including the duty to handle his continuation-of-coverage and separation matters in good faith and without retaliation. Defendants breached those duties, and their breaches caused Plaintiff damages.

62. LSMSA is vicariously liable for the acts and omissions of its employees committed within the course and scope of their employment under La. C.C. art. 2320.

**COUNT IX: Louisiana Whistleblower Retaliation**

63. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

64. The Louisiana Whistleblower Statute, La. R.S. 23:967, prohibits an employer from taking reprisal against an employee who, in good faith, objects to or refuses to participate in an employment act or practice that is in violation of state law, or who discloses or threatens to disclose such an act or practice, after advising the employer thereof.

65. Plaintiff, acting in good faith, objected to and refused to validate or participate in Defendants’ discriminatory harassment of his spouse, which he reasonably identified as an employment act or practice in violation of Louisiana law, and advised the administration of his opposition.

66. In reprisal for Plaintiff’s protected conduct, Defendants retaliated against him by, among other things, removing the courses he created, coercing his resignation, and orchestrating

the coordinated June 2025 harassment and removal from campus, culminating in Plaintiff's constructive discharge.

67. Plaintiff is entitled to compensatory damages, reasonable attorney's fees, and costs pursuant to La. R.S. 23:967(B).

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Dr. Olaseni "Seni" Fadipe, respectfully prays that this Complaint be deemed good and sufficient, that Defendants be duly cited and served, and that after due proceedings there be judgment in favor of Plaintiff and against Defendants, jointly, severally, and in solido, awarding: Back pay, front pay, and lost benefits, including an amount equal to no less than one year of Plaintiff's annual salary; Compensatory damages for emotional distress, mental anguish, loss of professional standing, and other harm; Statutory penalties and equitable relief for the denial of continuation-coverage notice, including a retroactive opportunity to elect continuation coverage; Injunctive relief enjoining further retaliatory and unlawful conduct and requiring a neutral employment reference confirming Plaintiff's dates of employment, position held, and eligibility for rehire; Reasonable attorney's fees and costs of these proceedings; Legal interest from the date of judicial demand until paid; and Such other and further relief, at law or in equity, as the Court deems just and proper.

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/**Donald C. Hodge, Jr. (La. Bar No. 29251)**
Telephone: (225) 800-7124
Facsimile: (888) 297-2959
Email: attorneydonaldhodge@gmail.com

**Brandy Mai***
Telephone/Text: (910) 580-0380
Email: brandy@bmailawyer.com
*Application for admission pro hac vice forthcoming.
Counsel for Plaintiff, Dr. Olaseni "Seni" Fadipe